Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000472
01-APR-2025
09:05 AM
Dkt. 72 MO

NO. CAAP-22-0000472

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

MICHAEL BASKIN; and PAIA BAY PROPERTIES LLC,
Appellants-Appellants-Appellees, v. MAUI COUNTY
BOARD OF VARIANCES AND APPEALS; KATE BLYSTONE[1]
in her capacity as Director of the Department of Planning
for the County of Maui; and DEPARTMENT OF PLANNING,
COUNTY OF MAUI, Appellees-Appellees-Appellants

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CCV-21-0000005)

**MEMORANDUM OPINION**
(By: Hiraoka, Presiding Judge, McCullen and Guidry, JJ.)

The Maui County Board of Variances and Appeals (**BVA**), the Maui County **Planning Department**, and the Planning Department's **Director** (collectively, the **County**) appeal from the July 5, 2022 **Final Judgment** for Michael Baskin and Paia Bay Properties LLC (together, **Baskin**) entered by the Circuit Court of the Second Circuit.[2] The Final Judgment reversed a decision by the BVA and directed the Planning Department to approve two parking-related applications sought by Baskin. We hold that the Director's decisions on Baskin's applications were not clearly

---

[1] Kate Blystone, the current director of the Department of Planning for the County of Maui, is substituted for former director Michele McLean under Hawaiʻi Rules of Appellate Procedure Rule 43(c)(1).

[2] The Honorable Peter T. Cahill presided.

erroneous, affected by an error of law, arbitrary, capricious, or an abuse of discretion. Accordingly, we reverse the Final Judgment and affirm the BVA's decision affirming the Director's actions.

## I. BACKGROUND

Baskin owns property at 49 Hana Highway in Pāʻia, Maui, and leases the property next door, at 65 Hana Highway. On November 25, 2019, Baskin submitted an **Off-site Parking Application** for 49 Hana Highway. The proposed 17-stall parking lot was to be used by patrons of Baskin's restaurant at 65 Hana Highway. A revised application was submitted on December 3, 2019. By letter dated January 23, 2020, the Director informed Baskin that his application would not be processed because the proposed off-site parking was not a public parking lot and did not serve public purposes — the only permitted parking uses for property zoned Public/Quasi-Public. Baskin appealed to the BVA on February 24, 2020.

On January 28, 2020, Baskin submitted a **Parking Reduction Application**. He sought to reduce the required number of parking stalls for 65 Hana Highway (where his restaurant was located) from 28 to 12, with space to park 20 bicycles. The Director denied the application on April 17, 2020, explaining her reasons. Baskin appealed to the BVA on May 18, 2020.

Baskin had submitted the applications because he planned to expand his restaurant. The BVA consolidated Baskin's appeals and held a contested case hearing. On December 10, 2020, the BVA made findings of fact and conclusions of law and issued its **Decision** denying both appeals.

Baskin appealed to the circuit court under Hawaii Revised Statutes (**HRS**) § 91-14. The circuit court remanded the case to the BVA for more fact-finding. The BVA made additional findings of fact on July 23, 2021. On June 15, 2022, the circuit court entered findings of fact, conclusions of law, and an order granting Baskin's appeal and instructing the Planning Department

2

to approve Baskin's applications.  The County moved for reconsideration.  The circuit court denied the motion.  The Final Judgment was entered on July 5, 2022.  This appeal followed.

## II. STANDARDS OF REVIEW

### A.   Agency Appeal

Our review of the circuit court's decision on an HRS § 91-14 agency appeal is a secondary appeal, in which we decide whether the circuit court was right or wrong by applying the standards of HRS § 91-14(g) to the BVA's decision and order. Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018).  HRS § 91-14(g) (Supp. 2021) provides:

> Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)   In violation of constitutional or statutory provisions;
>
> (2)   In excess of the statutory authority or jurisdiction of the agency;
>
> (3)   Made upon unlawful procedure;
>
> (4)   Affected by other error of law;
>
> (5)   Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;  or
>
> (6)   Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

We review an agency's findings of fact for clear error, and its conclusions of law de novo.  Del Monte Fresh Produce (Hawaii), Inc. v. International Longshore & Warehouse Union, Local 142, 128 Hawaiʻi 289, 302, 287 P.3d 190, 203 (2012).  An agency's determination of a mixed question of fact and law is reviewed under the clearly erroneous standard because it depends on the facts and circumstances of the particular case.  In re Kuamoo, 142 Hawaiʻi 492, 496, 421 P.3d 1262, 1266 (2018).  Where

mixed questions of fact and law are presented, we defer to the agency's expertise and experience in the particular field and will not substitute our judgment for that of the agency. <u>Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil</u>, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990).

The BVA's proceeding was governed by Maui County Code (**MCC**) § 19.520.040 (1991):

> An appeal may be granted only if the board finds one of the following:
>
> 1.   That the subject decision or order was based on an erroneous finding of a material fact or erroneously applied the law;
>
> 2.   That the subject decision or order was arbitrary and capricious in its application; or
>
> 3.   That the subject decision or order was a manifest abuse of discretion.

The BVA's Rules of Practice and Procedure (**RPP**) similarly provide:

> Unless otherwise provided by law, the board shall review the decision or order under appeal and may affirm the decision or order or remand the case to the hearing officer, if any, with instructions for further proceedings; or the board may reverse the decision or order if the substantial rights of the petitioner may have been prejudiced because the decision or order is:
>
> (1)   Based on a clearly erroneous finding of material fact or erroneous application of the law; or
>
> (2)   Arbitrary or capricious in its application; or
>
> (3)   A clearly unwarranted abuse of discretion.

RPP § 12-801-81 (2005).

### B.   Statutory Construction

Interpretation of a statute is a question of law reviewed de novo. <u>Kauai Springs, Inc. v. Planning Comm'n of Cnty. of Kauaʻi</u>, 133 Hawaiʻi 141, 163, 324 P.3d 951, 973 (2014).

### III. POINTS OF ERROR

The County states five points of error, which we rephrase according to the applicable standard of review: **(1)** the circuit court erred by applying HRS § 91-13.5(c) (concerning deadlines and deemed approval) to the BVA acting in its appellate role; **(2)** the BVA correctly concluded that Baskin's proposed private off-site parking was not allowed on land zoned public/quasi-public because it did not serve public purposes; **(3)** the Director's and BVA's findings that there was a parking shortage in Pāʻia was not clearly erroneous; **(4)** the circuit court's ruling was wrong; and **(5)** the circuit court erred when it denied the County's motion for reconsideration.

### IV. DISCUSSION

The parties' appellate briefs focus on the circuit court's findings of fact, rather than those of the Director or the BVA.[3]  We refer to the briefs filed in the circuit court appeal to discern the parties' respective arguments about the BVA's findings.

### A.    We need not decide whether HRS § 91-13.5(c) applies when the BVA considers an appeal.

Baskin's notice of appeal to the circuit court argued the BVA erred when it denied Baskin's oral motion "for an automatic approval due to the operation of HRS §[ ]91-13.5[.]"  The County argues that HRS § 91-13.5 doesn't apply to the BVA acting in its appellate role.[4]  We need not decide this issue because even if HRS § 91-13.5(c) applied when the BVA decides an

---

[3]    A circuit court reviewing an agency decision acts as an appellate court.  It should not make its own findings of fact; it decides whether the agency's findings of fact were clearly erroneous based on the evidence before the agency.  <u>Sierra Club v. Bd. of Land & Nat. Res.</u>, 154 Hawaiʻi 264, 284, 550 P.3d 230, 250 (App. 2024), <u>cert. granted</u>, No. SCWC-22-0000516, 2024 WL 3378462 (Haw. July 11, 2024).

[4]    The BVA also decides applications for zoning variances, hence its name, Board of Variances *and* Appeals.  MCC § 19.520.020 (1997).

appeal, the BVA's decision on Baskin's appeals was rendered within the time required by the applicable rule, RPP § 12-801-60 (1999).

HRS § 91-13.5 (2012) provides, in relevant part:

> (c)    All such issuing agencies shall take action to grant or deny any application for a business or development-related permit, license, or approval within the established maximum period of time, or the application shall be deemed approved[.]

Baskin argued:

> [W]ithin 120 days of the application being approved, there's supposed to be a decision rendered.  The rules aren't super clear at least to me whether that means the original underlying application or the application for this appeal, but in either event, more than 120 days has expired.  So, therefore, pursuant to HRS 91-13.5, we believe that this should be automatically approved.  And we understand there is different timelines for contested case hearings, but the 120 days was already expired before the contested case procedure was announced and held.
>
> . . . .
>
> Okay.  So with regard to the off site parking, the initial application . . . was filed on November 25th, 2019, and the amended application was filed December 3rd, 2019.  So 120 days from that application expired on April 16th, 2020.  The notice of appeal was filed on February 23rd, 2020.  And 120 days from that was July 2nd, 2020.
>
> And with regard to the parking reduction, the initial application was made January 27th, 2020.  The notice of appeal was filed May 20th, 2020.  The 120 days from the day of the initial application was June 10th, 2020, and the 120 days from the application for the appeal was September 27th, 2020.  Thank you.

Baskin did not cite to the BVA any rule setting a 120-day deadline.  Baskin cited RPP § 12-801-14 to the circuit court. That rule applies to final decisions and orders issued by the BVA when no contested case hearing is required; it does not apply to the Director's decisions on zoning code applications, or to the BVA's decisions in an appeal.

At any rate, Baskin's circuit court opening brief argued the BVA should have deemed his Off-site Parking Application (revised on December 3, 2019) approved on

6

December 18, 2019 (15 days later), under MCC "§ 19.510C," because "[t]here was no notification regarding completeness[.]"  There is no MCC § 19.510C.  But there was an MCC § 19.510.010.C.1 (2007).[5]  It provided, in relevant part:

> Not more than fifteen business days from the date upon which an application is received, the planning director shall review the application to determine if the application is complete or incomplete.  If the application is complete, the planning director shall continue processing the application.  If the application is incomplete, the planning director shall provide the applicant with a written statement that identifies the portions of the application determined to be incomplete.

Baskin misread the deadline, which was 15 *business* days; it would have fallen on December 24, 2019.  But even so, there was no requirement for the Director to notify Baskin she determined his application was complete.  The Director continued processing the application, consistent with MCC § 19.510.010.C.1.  The Off-site Parking Application was submitted under MCC § 19.36B.100 (2018).  That section does not contain a deadline for the Director to act on the application.  Baskin made the same arguments, citing the same MCC and RPP provisions, about the Parking Reduction Application.  That application was submitted under MCC § 19.36B.110 (2018), which does not contain a deadline.

Baskin's argument for "deemed approval" by the Director lacks merit.  The BVA was not wrong to deny Baskin's oral motion, albeit for the wrong reasons.[6]  The circuit court's conclusion that "the Planning Department . . . missed the applicable time deadlines, as set forth in [Baskin's] opening brief," was wrong.

Baskin's circuit court brief also argued his BVA appeals should be deemed approved because "under MCC 19.520.030,

---

[5]     MCC § 19.510.010 was amended effective February 12, 2020, by Ordinance No. 5047 (2020).  The 2020 amendment does not apply to this case.

[6]     The BVA unanimously approved a member's motion for a vote "that this filing for an appeal has been timely made and is being timely heard, in light of the tolling of applicable deadlines, if any, due to the [COVID-19] emergency declarations of the county and the state of Hawaii."  Baskin did not clarify the scope of his oral motion.  After the vote Baskin stated, "Nothing further, chair.  Thank you very much."

the final day for the determination of completeness of the notice of appeal would be March 5, 2020 and one hundred and twenty days for the BVA's written decision would fall on July 3, 2020." MCC § 19.520.030 (1991) contains no 120-day deadline. BVA RPP § 12-801-14 (1999) contains a 120-day deadline, but it doesn't apply to "decisions rendered after a contested case proceeding," which is what Baskin's appeals were.

The applicable deadline is referenced in BVA RPP § 12-801-80.1 (2007), "Procedure concerning appeals." It provides:

> The board shall hold a contested case hearing on the appeal. . . . Subchapters 3, 4 and 5 of these rules, relating to intervention, contested case procedures, and post[-]hearing procedures, respectively, shall govern the proceedings[.]

RPP § 12-801-60, part of Subchapter 5, requires that "decisions and orders in contested cases shall be rendered within forty-five days from the presentation of oral argument by the parties." Here, the BVA heard oral argument on November 25, 2020. The order denying both appeals was entered on December 10, 2020, well within the 45-day deadline. The circuit court was wrong when it concluded that the BVA "missed the applicable time deadlines, as set forth in [Baskin's] opening brief," and that "because the BVA failed to take action to grant or deny the Applications within the required time frame, [Baskin's] Appeal Applications must be approved". Baskin's argument for "deemed approval" by the BVA lacks merit.

**B.    The BVA did not err by affirming the Director's decision to close the Off-site Parking Application.**

By letter dated January 23, 2020, the Director informed Baskin:

> The proposed off-site parking lot is zoned P-1 Public/quasi-public, which allows the following standalone parking lots: "*Private parking lots or structures serving public purposes*" and "*Public parking lots or structures*" (MCC § 19.31.020). Based on a review of your application,

your proposed off-site parking lot is not for the above uses; therefore, we are unable to process your off-site parking permit application and have closed this application.

Baskin's BVA appeal application argued:

[MCC] Chapter 19 does not specifically define what "public purposes" are. . . . [Baskin] asserts 49 Hana Hwy. is a private parking lot to be used for a public purpose by providing the public with parking for the restaurant at 65 Hana Hwy.

Baskin's testimony to the BVA confirmed the proposed off-site parking could only be used by customers of his restaurant located next door.  The BVA found and concluded:

16.    The Board finds that 49 Hana Highway, Paia is zoned Public/Quasi-public.  The Board finds that "public parking lots" and "private parking lots serving public purposes" are permitted uses in Public/Quasi-public districts.

17.    The Board finds that [Baskin]'s [Off-site Parking] application was intended to allow the expansion of the restaurant at 65 Hana Highway, which is a private business.  The Board finds that off-site parking stalls for the exclusive benefit of a private business does not serve a public purpose.

. . . .

5.    Based upon the exhibits, appeals, written briefing and testimony and considering the record as a whole, the Board concludes that the Director did not err as a matter of law in determining that Off-site Parking stalls for the exclusive use of a private commercial business is not a permitted use in the Public/Quasi-Public district. Therefore, the Director's decision to return the application without processing it was not clearly erroneous as to a material fact or erroneous application of the law.

MCC § 19.04.040 (2018) does not define "public purposes."  But MCC § 19.04.015.C (2017) explains that the purpose and intent of Maui's comprehensive zoning law is "to provide reasonable development standards which implement the community plans of the County."  MCC § 19.31.010 (2013) explains: "Public/quasi-public districts provide for public, nonprofit, or quasi-public uses."  "Public use" means "a use conducted by, or a facility or structure owned or managed by, the government of the United States, the State of Hawaii, or the County of Maui which

9

provides a governmental function, activity, or service for public benefit."  MCC § 19.04.040.  "Quasi-public use" means a use conducted by, or a facility or structure owned or operated by, a nonprofit, religious, or eleemosynary institution which provides educational, cultural, recreational, religious, or other similar types of public services."  Id.  When these code provisions are read together, Wells Fargo Bank, N.A. v. Omiya, 142 Hawaiʻi 439, 450, 420 P.3d 370, 381 (2018), the BVA's conclusion that Baskin's proposed private off-site parking lot for the exclusive use of his restaurant's customers would not serve a public purpose was not wrong.  The BVA's conclusion of law no. 5 was not wrong.

Baskin's circuit court brief argued the BVA's decision "had no factual basis as Baskin stated on the record that he would accept a condition that the parking be open to all members of the public."  After being questioned about whether the public could park in the lot without patronizing Baskin's restaurant, Baskin stated:

> So from my standpoint, the answer is yes, if we are given and granted the approval today to have our outdoor dining, and if you felt, Raymond, that was in the best interest of the community and of the public, we would be happy to do so.  We could put a sign up saying public parking, and if you felt that that was the best route to go.  We're very amenable here today to try to get a resolution, whatever you feel would be the best thing to do.  In my view, it's customers coming to Paia.  So if they're coming to my restaurant, great.  And if you felt you wanted them to go to another restaurant, that would be fine with us as well.

The BVA was not reviewing the Director's decision on an application for a public parking lot.  It was reviewing the Director's decision on Baskin's application for a "proposed off-site parking lot" for the exclusive use of his restaurant's customers.  Since Baskin did not apply to the Director for a public parking lot, the BVA would have exceeded its appellate authority if it reversed the Director's decision on the condition that Baskin open the proposed private lot to the public.

Baskin's circuit court brief also argued the BVA "erroneously credited the testimony of John **Rapacz** that the 'Public Parking area' definition in MCC 19.04.040 does not apply to MCC Chapter 19.31 (Public/Quasi-public districts)" and "erroneously adopted comments by John Rapacz that the off-site parking is not a permitted use in the Public/Quasi-Public district . . . [and] that the 'Public Parking area' definition in MCC 19.04.040 does not apply anywhere except in the Historic District." Rapacz is the Planning Department's planning program administrator.

The BVA found:

> 14. John Rapacz testified that the off-site parking is not a permitted use in the Public/Quasi-Public district. He further testified that the "Public Parking area" definition in MCC § 19.04.040 does not apply anywhere except in the Historic District. He noted that the term is not used anywhere else.
>
> . . . .
>
> 18. The Board credits the testimony of John Rapacz that the "Public Parking area" definition in MCC § 19.04.040 does not apply to MCC Chapter 19.31 (Public/Quasi-public districts).

(Record citations omitted.)

MCC § 19.04.040 contains this definition:

> Parking area, public. "Public parking area" means an open area, other than a street or alley, used for the parking of automobiles and available for public use whether free, for compensation, or as an accommodation for clients or customers.

The phrase "public parking *area*" is not used in MCC Chapter 19.31. The only permitted parking uses in public/quasi-public districts are "Private parking *lots* or structures serving public purposes" and "Public parking *lots* or structures." MCC § 19.31.020 (2013). (Emphasis added.)

The phrase "public parking areas" appears in MCC § 19.52.090.B.49 (2013), which allows public parking areas in the two Lahaina historic districts, "provided, that none shall abut

Front Street."  Baskin cites no other MCC provision using the phrases "public parking areas" or "public parking area."

The Maui County Code differentiates between parking *lots* and parking *areas*.  When a statute specifically defines terms and uses them in some sections, but not in others, we are not free to interchange or substitute one for the other, even if they share a common meaning in everyday speech.  The BVA was not wrong to conclude that "public parking area" is not a permitted use in public/quasi-public districts.  It did not err by denying Baskin's appeal.  The circuit court's ruling to the contrary was wrong.

> **C.    The BVA did not err by affirming the Director's decision to deny the Parking Reduction Application.**

Baskin's MCC § 19.36B.110 Parking Reduction Application sought to reduce the number of required parking stalls at 65 Hana Highway from 28 to 14, and to convert two of the 14 stalls to accommodate 20 bicycles.  MCC § 19.36B.110 provides, in relevant part:

> A.    For any proposed use, the director may reduce by up to 50 percent the number of the required parking spaces . . . after making a written determination that adequate parking will be reasonably provided.  The director shall consider the proposed use, any structures, lot configurations, industry standards, general plan, zoning and state land use designations, historic character and applicable design guidelines in considering the necessity and type of conditions. . . . At least one of the following criteria must be met for the director to determine that parking will be reasonably provided:
>
> . . . .
>
> 3.    One of the following is located within two thousand five hundred feet of the proposed use and can provide parking for the proposed use:
>
> > a.    A publicly owned off-street parking lot; or
> >
> > b.    Other parking that is available to the public and is not used to otherwise fulfill the parking requirements of this chapter.

. . . .

> 5.     There is nearby transit, pedestrian, or bicycle access and bicycle parking, and safe access is provided for pedestrians.

. . . .

> C.     Bicycle parking.  The number of parking spaces required for non-dwelling uses may be reduced by up to two, at a ratio of one space for each ten provided bicycle parking spaces[.]

By letter dated April 17, 2020, the Director denied the application.  The Director explained that the application met criteria A.3.a, A.3.b, and A5, but:

> While these provisions are applicable, a determination cannot be made that adequate parking will be reasonably provided.
>
> There are some businesses in Paia Town that have no parking requirement due to grandfathering (reference MCC 19.500.110.D); even if one of those business changes hands, if the same type of business is conducted, there is still no parking requirement.  Due to this code provision, and the popularity of Paia in recent years, the area cannot accommodate any further intensity in uses without the required parking being provided.  Over the years, businesses have continued to utilize the available parking offered to the public and unfortunately, this area is at its maximum capacity for parking.  In order to justly serve the Paia community and visitors alike, it would be a disservice to allow further development that would intensify parking in this area, unless the area's parking capacity is increased, or there are exceptional circumstances.  Therefore, your request is denied.

Baskin's BVA appeal application argued:

> Despite acknowledging that the application meets the criteria 19.36B.110.A.3a and 3b and 19.36B.110A.5, the department states that a determination cannot be made that adequate parking will be reasonably provided.  By this finding the department seems to be imposing some novel criteria instead of applying the law to the facts presented in the application.
>
> Moreover, . . . the department ignores that [Baskin] has offered an off-site parking located at 49 Hana Hwy. to be used by the public.  This determination has nothing to do with safety, impacts on the adjacent properties and/or the environment.
>
> . . . .

> The Denial Notice is an example of an arbitrary and capricious abuse of power by issuing a decision lacking a rational connection between the facts provided and the decision made, as well as contrary to the applicable law.
>
> . . .
>
> . . . .
>
> The department also ignores the fact ignores [sic] that [Baskin] has offered an off-site parking located at 49 Hana Hwy. to be used by the public. The Denial Notice is therefore a clearly unwarranted abuse of discretion.

The BVA found and concluded:

> 15. Regarding [Baskin]'s application for a parking reduction, [Baskin's project architect Kurt **Magnes]** testified that Paia needs parking and a reduction was a "no-brainer". [Baskin's landscape architect David **Sereda]** testified that people "grumble that there's inadequate parking in Paia" and that the additional stalls would be a benefit to Paia community. Niess testified that "everybody knows that Paia needs more parking." Rapacz agreed that "it's generally recognized that there's a parking issue in Pāʻia."
>
> . . . .
>
> 19. The Board finds that the Director's denial of the parking reduction application was directly related to the severe shortage of parking in Paia. The Director's reasoning is identical to that in the August 10, 2020 parking reduction denial for 151 Hana Highway, Pāʻia.
>
> 20. The Board finds that the denial of both applications does not appear to be rooted in personal animus against Mr. Baskin.
>
> . . . .
>
> 6. The Board also concludes that the Department's denial of [Baskin]'s parking reduction application was not arbitrary or capricious in its application, and was not a clearly unwarranted abuse of discretion. Further, as this Board has found that the denials were not rooted in animus, the Board concludes that [Baskin] was afforded a fair application process.

(Record citations omitted.)

Baskin's circuit court brief first argued that the BVA misapplied the law, was arbitrary and capricious, and abused its discretion "for a very simple reason that [Baskin] met three conditions for a parking reduction and only needed to show one" under MCC § 19.36B.110.A. Baskin misreads MCC § 19.36B.110. Meeting at least one of the ten criteria in MCC § 19.36B.110.A is

14

a minimum requirement for consideration of the application; it is not dispositive.  The Director must still determine whether "adequate parking will be reasonably provided" after considering the factors listed in the code section.

Magnes testified that parking was, "you know, a major problem in Paia."  Sereda testified "that any time you talk about parking and people grumble that there's inadequate parking in Paia, you know[.]"  Peter Niess, an architect who lives in Haʻikū, lived in Pāʻia for six years, and drives through Pāʻia twice a day, testified that "[e]verybody knows that Paia needs more parking" and conceded the Parking Reduction Application "doesn't reduce the traffic and issues of parking in Paia in getting to a business or even wanting to stop in Paia."  Rapacz testified that within the Planning Department, "it's generally recognized that there's a parking issue in Paia."  The BVA record included a copy of the Director's August 10, 2020 denial of a parking reduction application for 151 Hana Highway in Pāʻia that contained an explanation similar to the one in Baskin's denial letter.

Baskin's circuit court brief argued that the BVA "ignored the fact that [Baskin was] willing to allow anybody to park there [on 49 Hana Highway], including non-customers [of his restaurant at 65 Hana Highway]."  As we stated above, Baskin didn't apply for a public parking lot at 49 Hana Highway, so the BVA could not have conditioned a reversal of the parking reduction denial on Baskin having a public parking lot on 49 Hana Highway.

On this record, we cannot conclude that the Director's decision to deny the Parking Reduction Application was based on a clearly erroneous finding of material fact or erroneous application of the law; or was arbitrary or capricious; or was an abuse of discretion.  The BVA did not err by denying Baskin's appeal.  The circuit court's ruling to the contrary was wrong.

We need not address the circuit court's denial of the County's motion for reconsideration.

## V. CONCLUSION

The circuit court's July 5, 2022 Final Judgment is reversed.  The BVA's December 10, 2020, Decision denying Baskin's appeals and affirming the Director's actions is affirmed, but for reasons different than those articulated by the BVA.

DATED: Honolulu, Hawaiʻi, April 1, 2025.

On the briefs:

Thomas Kolbe,
Kristin K. Tarnstrom,
Deputies Corporation Counsel,
County of Maui,
for Appellees-Appellees-
Appellants.

Terrance M. Revere,
Magdalena Bajon,
for Appellants-Appellants-
Appellees.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge